IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANET GUMP,
)
)
    Plaintiff,
)
)
  -vs-
)    Civil Action No. 15-87
)
CAROLYN W. COLVIN,
)
COMMISSIONER OF SOCIAL SECURITY,
)
)
    Defendant.
)

AMBROSE, Senior District Judge.

## OPINION
### and
### ORDER OF COURT

### SYNOPSIS

Janet Gump ("Gump") filed an application for a period of disability and disability insurance benefits ("DIB") as well as a claim for supplemental security income ("SSI) on December 16, 2011, alleging a disability beginning September 1, 2011, due to, among other things, seizures, degenerative back disease, migraines, high blood pressure, esophageal dysmotility and obesity. (R. 14, 16)[1] The claims were denied initially on April 23, 2012. (R. 14) Pursuant to her request, a hearing was held on May 14, 2013. (R. 14) A vocational expert appeared and testified. (R. 23) The ALJ denied the claim by written decision dated May 3, 2013. (R. 14) Gump requested review by the Appeals Council, which was denied. She then brought this action.

Before the Court are Cross-Motions for Summary Judgment. (Docket Nos. [7] and [9]). Both parties have filed Briefs in Support of their Motions. (Docket Nos. [8] and [9]) After careful consideration of the submissions of the parties, and based on my Opinion set forth below, the

---

[1] The ALJ concluded that Gump had sufficient quarters of coverage to remain insured for disability insurance benefits through December 31, 2016. (R. 14)

1

ALJ's decision is affirmed.

I. **BACKGROUND**

Gump was born on May 14, 1966 and was 45 years old at the time of the alleged disability onset date. (R. 20) She is married and has two children, ages 23 and 14. (R. 29) She lives with her husband and her 14 year old son. (R. 30) She completed high school and obtained an Associate's Degree in Applied Science and Business Management. (R. 31) She does not have a driver's license. (R. 31) Gump works part-time as a cashier at a market and receives unemployment compensation. (R. 30, 32) In a typical week Gump works between 20-24 hours, with three four-hour shifts and one eight-hour shift. (R. 32) She usually stands at the cash register during the entire shift. (R. 32-33) Generally she does not stock shelves because of her back but will do so when told. (R. 33) Her job requires that she lift up to 10 pounds. (R. 34) Prior work experience includes positions as a bank teller and a receptionist for the Corps of Engineers. (R. 35) Gump helps with cooking and cleaning around the house, and washes the dishes. (R. 46)

As stated above, the ALJ concluded that Gump has not been under a disability within the meaning of the Social Security Act since September 1, 2011. (R. 11) Specifically, the ALJ determined that Gump's degenerative disc disease, seizure disorder, migraine headaches, hypertension, depression, anxiety, mild esophageal dysmotility and obesity constituted severe impairments, but that those impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-17) The ALJ further concluded that Gump had the residual functional capacity to perform light work with certain limitations. (R. 18) Further, although the ALJ declared Gump unable to perform her past relevant work, she concluded that there were jobs that existed in the economy that she was able to perform, such as an inspector-handpacker, an electrical equipment inspector and a jewelry stringer. (R. 21) Consequently, the ALJ denied her claim.

Gump challenges the ALJ's decision in several respects. For the reasons set forth below, I reject each challenge.

## II. **LEGAL ANALYSIS**

### A) Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not,

whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P. appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B) Discussion**

Gump's argument covers several pages of her brief. Nevertheless, it is somewhat difficult to follow. The Commissioner characterizes Gump's arguments as consisting of a challenge to the ALJ's finding at the third step regarding the Listings; a challenge to the ALJ's RFC assessment; and a challenge to the ALJ's findings pertaining to obesity. Significantly, Gump has not filed a Reply Brief objecting to the Commissioner's characterizations of her arguments. I find the Commissioner's characterizations to be a helpful way to organize Gump's arguments.

    1.    Migraines and Seizures at Step Three

Gump contends that the ALJ failed to properly analyze her migraine headaches. According to Gump, her migraine headaches should have been assessed under Listing 11.02.

4

She further reasons that her non-convulsive epilepsy should have been analyzed under Listing 11.03.

I find Gump's argument less than compelling. First, it consists of no more than three sentences and contains no citation to any kind of authority. She references Listings11.02 and 11.03, yet fails to demonstrate how she satisfies any of the requirements set forth therein. In the absence of any substantive or meaningful analysis, Gump's assertions are undeveloped and wholly inadequate. *See Pennsylvania v. U.S. Dept. of Health & Human Services*, 101 F.3d 939, 945 (3d Cir. 1996) (stating that conclusory assertions, unaccompanied by a substantial argument, will not suffice to bring an issue before the court). Gump bears the burden of proving that she met the criteria set forth in the Listings. *See 20 C.F.R. § 404.1512(a)*

Moreover, contrary to Gump's assertions, the ALJ did consider whether Gump satisfied the requirements of Listing 11.00 (neurological). (R. 17) The ALJ explained, and the record confirms, that Gump did not experience seizures more than once a month (§ 11.02) or once a week (§ 11.03) despite treatment. (R.17) Indeed, Gump herself acknowledged that the seizures did not interrupt her work life. (R. 486)

Further, the Listings define impairments that would prevent an adult from performing "any gainful activity" rather than merely "substantial gainful activity." *See D'Arrigo v. Barnhart*, Civ. No. 5-5394, 2006 WL 2520524 at * 5 (E.D. Pa. Aug. 23, 3006); and *Colon v. Astrue*, Civ. No. 9-2996, 2010 WL 2024512 at * 2 n. 8 (E.D. Pa. April 22, 2010) (stating that the "purpose of the listings is to describe impairments 'severe enough to prevent a person from doing any gainful activity'"), *citing, Sullivan v. Zelby*, 493 U.S. 521, 532 (1990). Here, Gump worked 20-24 hours a week and thus her impairments did not preclude her from doing *any gainful activity.* Consequently, I reject Gump's assertion regarding the Listings and affirm the ALJ's findings in this regard.

2. Residual Functional Capacity Assessment

Gump similarly challenges the ALJ's RFC findings. My review of the record convinces me that substantial evidence supports the ALJ's RFC assessment. For instance, with respect to Gump's seizures, her EEG was normal and Gump herself admitted that her seizures did not interrupt her life or work. (R. 19, 300, 486) Medical records indicate that the seizures were considered well controlled and that Gump may be taken off the relevant medication at some point. (R. 19, 297) With respect to migraines, the medical records similarly reveal that they were well controlled with medication; a CT administered during an admission was normal; and Gump experienced them only occasionally. (R. 19, 298)

As to the back pain, Gump displayed no overt pain behavior and she could rise from a seated position and get on and off the examination table without assistance. (R. 19) Further, she did not require an assistive device. (R. 19) Physical examinations indicate normal strength, sensation, reflexes and gait. (R. 19, 277) X-rays and an EMG were normal and an MRI revealed only degenerative changes with disc protrusion from L1-S1. (R. 19, 275) Additionally, she has had only conservative treatment. She has not had surgery, she has not been followed by a specialist, and she has only received a few steroid treatments. (R. 19)

In terms of her obesity, as stated elsewhere in this opinion, there is no evidence of record indicating that Gump's weight impacts her residual functional capacity. Similarly, with respect to her mild esophageal dysmotility, there is no indication that she requires ongoing treatment. As the ALJ concluded, Gump's "scant treatment suggests she overstates her symptoms." (R. 19) In regards to Gump's depression and anxiety, she has not received any professional mental health treatment and she herself did not endorse depression or anxiety during a presentation for nausea. (R. 19)

This evidence of record is, as the ALJ found, consistent with Dr. Mari-Mayan's conclusion that Gump could perform light work. That the ALJ gave "great weight" to Dr. Mari-Mayan's assessment does not mean that he was required to adopt every specific limitation

(including that Gump was capable of only standing / walking a total of three hours). See 20 C.F.R. § 404.1527(d) (stating that the RFC finding is reserved to the Commissioner).

Gump also contends that the ALJ failed to consider Diane Muka's psychological evaluation. I disagree. The ALJ gave appropriate consideration to the evaluation. (R. 19) Moreover, Muka's evaluation fails to support Gump's argument, as it records a GAF score of 65 which denotes only mild symptoms in functioning. (R. 448). As to Gump's pain, the ALJ noted that medical personnel had described Gump as having a "pain personality more than anything." (R. 19)

Consequently, there is substantial evidence in the record upon which the ALJ could rely in finding that Gump had the residual functional capacity to perform light work with certain limitations.

### 3. Obesity

At the second step of the analysis, the ALJ concluded that Gump suffers from the severe impairment of obesity. Gump contends that, despite this finding, the ALJ failed to evaluate obesity as required by SSR 02-1P. More specifically, Gump urges that the ALJ erred in evaluating obesity in assessing RFC. She contends that functional limitations arising from obesity must be incorporated into the RFC analysis and any limitations must be included in the hypothetical posed to the vocational expert.

SSR 02-1 requires that ALJs "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." SSR 02-1P, 2000 WL 628049 at * 1. It also instructs ALJs to consider "the combined effects of obesity with other impairments." Id. After careful consideration, I find that Gump satisfied the dictates of SSR 02-1P. At the third step of the analysis, the ALJ stated:

I considered SSR-02-1p in light of the fact the claimant is considered to be obese.

7

> However, I do not find obesity, alone or in combination with other impairments, limits the claimant's ability to sustain activity on a regular and continuing basis.

(R. 17) "When the ALJ determines that obesity, either alone or in concert with other conditions, is not a relevant factor, there is no requirement that an ALJ repeat this determination throughout each step of the sequential analysis." *Rivera v. Comm'r of Soc. Sec.*, 320 Fed. Appx. 128, 2 (3d Cir. 2009), *citing, Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005). Having found at the third step of the analysis, that Gump's obesity, individually or in combination with her other severe impairments, did not limit her ability to sustain activity on a regular and continuing basis, the ALJ was not obligated under *Rivera* to repeat that analysis again within the context of RFC.

Yet even assuming that the ALJ failed to explicitly consider Gump's obesity, I find that a remand is unnecessary because consideration of the impairment would not affect the outcome of the case. See *Rutherford v. Barnhart*, 399 F.3d 546, 552-3 (3d Cir. 2005) (stating that a generalized assertion that weight makes it more difficult to stand, walk, and manipulate hands and fingers is insufficient to require a remand) There is simply no evidence that Gump's obesity affected her ability to work. Indeed, she did in fact work a part time job. Moreover Gump bore the burden of proof through the fourth step of the analysis and she failed to submit any evidence linking exertional and / or postural limitations as set forth in SSR 02-1P to her obesity.

Further, at the fourth step of the analysis, the ALJ relied upon Dr. Mari-Mayan's report in finding that Gump had the residual functional capacity to perform light work with some limitations. (R. 20) The ALJ found persuasive Dr. Mari-Mayan's indication that Gump had normal strength, sensation, range of motion and gait. (R. 20) Dr. Mari-Mayan's findings indicate that Gump did not suffer from the exertional or postural limitation discussed in SSR 02-1P. The question posed to the vocational expert need only include those impairments that are supported by the record. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) Here, the hypothetical posed to the vocational expert accurately reflected those impairments and

limitations. Consequently, I reject Gump's contention that a remand is warranted on this issue.

III. **CONCLUSION**

After a thorough review of the record and careful consideration of Gump's arguments, I find that the decision rendered below should be affirmed.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANET GUMP,  )
             )
   Plaintiff, )
             )
  -vs-       )   Civil Action No.  15-87
             )
CAROLYN W. COLVIN,  )
COMMISSIONER OF SOCIAL SECURITY,  )
             )
   Defendant. )

AMBROSE, Senior District Judge.

# ORDER OF COURT

Therefore, this 1st day of September, 2015, it is ordered that Defendant's Motion for Summary Judgment (Docket No. 9) is granted and Plaintiff's Motion for Summary Judgment (Docket No. 7) is denied.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge